(No. 82-CC-0035-■■■■■■■■)

CHARLES J. SPENCER, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed March 7, 1983.*

*Order filed September 19, 1983.*

*Opinion filed December 7, 1983.*

LEAHY & LEAHY, for Claimant.

NEIL F. HARTIGAN, Attorney General (WILLIAM E.

WEBBER, Assistant Attorney General, of counsel), for Respondent.

## ORDER

ROE, C.J.

This cause, having already come on to be heard, and this order being issued *nunc pro tunc*.

On April 2, 1982, the Claimant by counsel filed a motion to recover certain costs which he was required to incur unnecessarily by certain inadvertent actions by the Respondent. The motion was heard and decided in the Claimant's favor from the bench during the course of oral argument on his case in chief on January 11, 1983. No post-judgment pleadings having been filed, the decision became final on February 11, 1983. However, no written order has been heretofore issued. Because the award made is not contingent upon our decision of the merits of Claimant's case we issue this written order now to facilitate payment without further delay.

Wherefore, it is hereby ordered that Claimant be, and hereby is, awarded the sum of $131.94 in conformity with our decision on January 11, 1983.

## ORDER

Holderman, J.

This matter comes before the Court upon the Claimant's motion for judgment which was filed on September 30, 1982. Oral argument was had in this matter at the request of the Claimant in January of 1983.

The grounds for the motion were stated as follows:

"1. Hearing was held in this matter on April 27, 1982.

2. Claimant's Brief was filed on June 25, 1982.

3. Respondents' Brief was due on August 24, 1982.

4. Respondents' have filed no Brief nor has any extension of time been granted Respondents."

Claimant then requested judgment for $32,146.00 be entered against the Respondent.

We sympathize with the Claimant's predicament. It is very unusual for the Respondent not to file a timely brief in this Court and even more unusual for an extension of time to be requested. However, failure to file a brief or a tardy filing of a brief is not grounds for summary or default judgment. In such situations it is this Court's policy for the commissioner to proceed with his report to the Court without benefit of the brief, *i.e.* the Court will proceed to rule on the merits without waiting (and usually without benefit of knowing the Respondent's position). If a later brief is filed before a decision is rendered, it is subject to being stricken in the Court's discretion upon appropriate motion by the other party. We have considered this issue on numerous occasions and it is our opinion that this approach is fair to the Claimant and not unduly harsh on the taxpayers of Illinois.

In many cases (apparently the case at bar included),

out of frustration a party makes a motion for relief in the nature of default or summary judgment. In such a situation the parties unknowingly are causing further delay. The commissioner who heard the case and is familiar with the proceedings and issues has no authority to rule on the motion. The motion has the effect of taking the case out of the commissioner's hands and causing it to be assigned to a judge who is called upon to make a decision without benefit of the report of the commissioner. The whole purpose of having commissioners is then for naught, and the judges' backlog becomes greater.

In summary, we construe Claimant's motion to be in the nature of one for default judgment and as such, it is hereby denied. If we were to construe it as a motion for summary judgment, it would be pointless because the hearing has been held and the case is ripe for a decision. It appears that all Claimant was seeking by filing the motion is a decision from the Court on the merits. We have heard oral argument on the merits and will consider those arguments in conjunction with the commissioner's report when it is filed. The commissioner is directed to prepare and file his report without undue delay now that the motion at bar has been decided.

## OPINION

HOLDERMAN, J.

This matter comes before the Court as a result of a claim filed by Claimant Charles J. Spencer. Claimant was employed as a correction officer trainee at the Menard Correctional Center by the Department of Corrections on May 14, 1976. He was injured and obtained a leave of absence from his employment on August 30, 1976. This leave of absence was without pay, and was extended from November of 1976 at various intervals

through January 24, 1978. On October 18, 1977, Claimant requested, in writing, an extension and, upon the granting of said extension, the request contained a handwritten note stating, "This is the final leave I will approve—90 days," and was signed by Warden M. P. Lane.

On January 23, 1978, Claimant was advised by Clearlyn Giordana, personnel officer, that due to Warden Lane's order, there could be no extensions of his leave of absence. On March 16, 1978, Ms. Giordana wrote Warden Lane asking his permission to either terminate Claimant or extend his leave of absence. Warden Lane replied, "If we do not have an extension, then I suggest termination."

The evidence indicates that Claimant received a copy of a personnel action form to terminate his employment on March 17, 1978, with the termination backdated to be effective January 25, 1978. This was the last communication received by Claimant from the Department. He was not asked to return his uniforms, identification cards, or his number tags. His doctor did not release him to return to work until the following August.

There is considerable disputed testimony as to the form and signature for termination. Claimant relies on the fact that the actions of his superior were improper and this brought about his termination. Specifically, he was told the warden would grant no further leave extension, placing him in a position where applying for the same would be a useless act. He was then terminated because he had not filed for an extension.

It is Respondent's position, which was argued strenuously, that this dispute should fall within the jurisdiction of the Civil Service Commission, which position is opposed by the Claimant. It is his contention that trainees do not fall within the jurisdiction of the Civil Service

Code, nor its protections. His position would seem to be supported under section 8b.17 of the Personnel Code (Ill. Rev. Stat. 1983, ch. 127, par. 63b108b.17).

It would therefore follow that the specific issue confronting this Court is what status or rights a trainee has when employed by the State of Illinois. It would appear from a reading of the Personnel Code that a trainee and probationary employee enjoy a very similar status, the only difference being that a probationary employee already has acquired the skills necessary for a particular job and a probation period is allowed to see if he is adaptable and proper for the job. A trainee, however, would seem to be a person who enters into a probationary period of training which may or may not result in permanent employment once he is trained for a particular job description.

The Department, in this case, in effect said we cannot continue you as a trainee if you are going to continue to take these extensions and, for whatever reasons, notified Claimant that his employment was terminated as of March 1978. The backdating of his termination had no effect on Claimant since he was in a non-pay status at all times and dates mentioned herein.

The question before the Court, therefore, is what rights under the laws of the State of Illinois did Claimant enjoy. There was no express employment contract and the termination, in any event, appeared to be in good faith. The issue of whether or not this was retaliatory discharge was not raised by either party and therefore is not before the Court. It appears that Claimant is relying upon implied duty on the part of Respondent. The Illinois courts have yet to allow actions for an implied duty to terminate only in good faith in the absence of an express employment contract. A good discussion of these

rights is found in the case of *Sargent v. Illinois Institute of Technology* (1979), 78 Ill. App. 3d 117, 397 N.E.2d 443.

It is the Court's opinion that the form, structure and method of discharge is really not relevant to Claimant's cause of action. He would certainly have no more rights than a probationary employee under the Personnel Code. It has been held that a probationary employee who is terminated four days prior to his six-month service has no right to a hearing or a cause of action concerning his discharge. *Swanson v. Visotsky* (1968), 97 Ill. App. 2d 305, 240 N.E.2d 444.

It is the Court's conclusion and finding that Claimant received notice of his termination on a non-pay status in March of 1978. It is the Court's further finding that as a trainee, he acquired no specific status other than any other common law employee, and that any irregularities under the Personnel Code are irrelevant and do not create a cause of action.

Claim denied.