(No. 86-CC-0203– ▮▮▮▮▮▮▮▮)

RODNEY J. GUFFEY, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 4, 1987.*

KNUPPEL, GROSBOLL, BECKER & TICE, for Claimant.

NEIL F. HARTIGAN, Attorney General (CLAIRE GIBSON TAYLOR, Assistant Attorney General, of counsel), for Respondent.

SOMMER, J.

This cause comes on for hearing on a complaint for loss of income due to an accident involving Claimant's truck. There does not appear to be a great deal of dispute as to the facts. All vehicles involved were traveling southbound on I-55 near the 100-mile marker. At this location the wide shoulder on the right converges with the right-hand lane as the roadway reaches the overpass. At the overpass, the shoulder ceases to exist,

and there are only two lanes with guardrails on either side.

On June 20, 1984, at approximately 8:30 a.m., the State of Illinois had a State maintenance truck located on the shoulder, traveling at approximately five miles per hour spraying weeds along the base of the overpass. The spray truck pulled into the right lane of traffic at the expiration of the shoulder at a time when two large semi-trailer trucks were in both lanes. Since neither truck could go anywhere, they braked. The Claimant who was behind the two trucks apparently was checking his rear-view mirror to follow the truck in the passing lane. At that moment he looked up, and it was too late to avoid colliding with the trucks in front. Claimant stated that about ½ to ¾ of a mile before the accident he saw the State truck on the shoulder. From then on the truck trailers ahead of him blocked his view of the State truck.

The driver of the State truck stated that he checked his rear-view mirror before pulling into the right lane and saw trucks approximately one mile back. He further stated he assumed they were going to move into the passing lane, as one appeared to be doing so. He also acknowledged that he knew "they could come up on you pretty quick."

The State truck driver had a duty to watch for and to yield to the traffic on the highway. (Ill. Rev. Stat., ch. 95½, par. 11—906.) That duty was breached when the State truck driver failed to see properly the three trucks and entered the highway in front of them. The State truck driver's entering the highway so as to interfere with the progress of the three trucks was the proximate cause of the accident. The present case can be distinguished from *Harris v. State* (1986), 39 Ill. Ct. Cl. 176, in that the lead truck in the *Harris* case stopped

when it did not have to and was hit by the following truck. Both trucks belonged to the same owner. In this case the lead trucks had to stop suddenly as further progress would necessarily lead to a collision with the State truck, each other, or the bridge rail.

The measurement of damages in this case is difficult. First, the Claimant prays for damages for 52 working days while the Respondent argues that there is no evidence of mitigation. It would seem reasonable to the Court, and the Claimant so testified, that he had to receive his settlement from his insurer and then purchase and prepare a new truck. Neither one of these procedures could be expected to occur overnight. Thus, the Claimant could be expected to take some time to get on the road again, and the Claimant's testimony was that it took 52 working days. Such testimony was not disputed at the hearing by the Respondent.

Testimony elicited by Commissioner Barnes was that the Claimant was paid by the load by Ron Smith, his employer or contractor. The truck carried approximately 22 tons net weight, and the Claimant was paid about $1.40 per ton per trip. This would mean about $30.80 per trip income. Unfortunately, the trips per day varied from 8 to 13, so the lost income cannot be accurately projected. However, if we assume an average of 11 trips per day, the Claimant would have an average income of $338.80 per day or $17,617.60 income before expenses. From the Claimant's 1985 income tax form, expenses seem to run about 70% of the gross income from business, so the lost profit would be $5,285.28 approximately.

At the hearing, the Claimant attempted to prove the lost income by entering into evidence the Claimant's

1985 income tax forms. Claimant testified that he worked exclusively for Ron Smith during that year; however, on the forms income from other trucking employers is included; only $59,880.03 comes from Ron Smith out of a total of $70,974.99. We are led to the conclusion that the profit would be 84.4% of that stated, or $24,702.03 after adding back depreciation. If the Claimant operated 50 weeks per year minus five holidays, a daily rate of $100.82 results, or $5,242.64 profit for 52 days. As the damages calculated both ways are remarkably close, the damages are establishable, and the Court will award those based on the 1985 income tax return.

The award will be reduced by 33⅓% for comparative negligence. The Claimant had a duty to drive at a reasonable and proper speed and not to follow too closely. (Ill. Rev. Stat., ch. 95½, pars. 11—601, 11—710.) However, the Claimant could not reasonably anticipate that the State truck, which he could not see, would pull out in front of the lead truck. Nonetheless by following too closely and being ready to overtake a truck traveling 50-55 miles per hour when the speed limit was 50 miles per hour, in a narrowing section of roadway, he contributed to the accident. Therefore the Claimant is entitled to an award of $3,491.76, and it is so ordered.