(No. 84-CC-1645–

JOHN CONNORS, Claimant, v. THE STATE OF ILLINOIS, Respondent.

*Opinion filed February 25, 1988.*

GREY CHATHAM, for Claimant.

NEIL F. HARTIGAN, Attorney General (CLAIRE GIBSON TAYLOR, Assistant Attorney General, of counsel), for Respondent.

SOMMER, J.

This is a claim for personal injuries pursuant to section 8(d) of the Court of Claims Act (Ill. Rev. Stat. 1983, ch. 37, par. 439.8(d)). The Claimant alleges that he was injured as a result of the negligence of the State's employees on July 30, 1983, when he slipped and fell on

wet terrazzo tile on the floor just outside the shower area in one of the housing units at the Vandalia Correctional Center.

The Claimant was an inmate at Vandalia. He was housed in a dormitory, the interior of which is an open facility with the shower area at one end. The shower area is enclosed by a half wall approximately 4 feet high with an open entrance in the middle. There are two steps up to the entrance to the shower area off the floor of the rest of the dormitory. The walls and floor of the shower area are tile, and the floor of the dormitory is terrazzo tile.

Michael Baker, the assistant warden at Vandalia, was called to testify by the Claimant as an adverse witness pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1102). Baker testified he knew from experience that terrazzo tile becomes slippery when wet. There had been complaints from inmates and from guards that the terrazzo tile floor outside the shower room entrance on the dormitory floor became slippery as a result of water accumulating there. In order to try to correct this problem, the State in April 1983, caused the placement of non-skid pads onto the tile dormitory floor outside the shower room entrance. Baker specifically testified that the purpose for which the pads were placed was to make safe that area of the floor which became wet when men tracked water onto the terrazzo tile floor after showering.

The pads are approximately 24″ by 6″ and adhere to the tile floor. The exposed face of the pad is black and is covered with a dull sandpaper-like finish. Two rows of three pads in each row were placed on the tile floor directly in front of the steps into the shower area. This

effectively covered an area of approximately three feet by four feet of the floor.

Baker also testified that there are no rules in the facility that the men must dry off in the shower area or on the non-skid pad.

Eddie Oldham, the chief engineer at Vandalia, was also called by Claimant as an adverse witness. He testified that there are terrazzo tile floors throughout the dormitory. The only floor drains are in the shower area itself and in the separate lavatory area. He further testified that he has personal knowledge that the inmates dry off after their showers outside the actual shower area. They stand sometimes on the non-skid pads and sometimes on the tile floor to the side of the skid pads, next to the half wall which separates the shower area from the rest of the dormitory.

On July 30, 1983, during the afternoon, the Claimant had been exercising in the yard. After completing his exercises, he went into the dormitory to clean up. Since the showers were all being used, he had to wait near the entrance to the shower area. When he finished showering, he towelled off in the center of the shower area. He then stepped out of the shower area onto the non-skid pads to complete drying off. As he started to walk back to his bunk, he stepped off the pads onto the tile floor. His right foot slipped on the tile, and he fell onto his back, landing primarily on his upper back and neck. He went to the health care unit in the Vandalia facility for initial treatment.

On July 31, the day after his fall, the Claimant contacted the health care unit to complain about difficulty breathing when lying down. That afternoon the dorm officer called the health care unit to ask for a cervical collar for the Claimant, as the Claimant was in

severe pain. The Claimant was taken to the unit to be fitted. When he raised his head so that the collar could be applied, he cried out in pain. The medical personnel at Vandalia therefore admitted him to St. Mary's Hospital in Centralia, Illinois, for X rays.

On August 2, 1983, the Claimant was transferred to St. Elizabeth's Hospital in Belleville, where he came under the care of Dr. William Sprich, a neurosurgeon. Dr. Sprich diagnosed broken ligaments between the 5th and 6th cervical vertebrae. On August 5, Dr. Sprich performed surgery on Claimant's cervical spine. The surgical procedure entailed wrapping of stainless steel wire around the vertebral levels above, at and below the fracture dislocation in order to properly align the cervical spine. This resulted in a surgical scar on the base of the back of Claimant's neck approximately eight inches long.

The Claimant was discharged from the hospital on August 10, 1983, and returned to Vandalia. Dr. Sprich saw the Claimant three times thereafter for follow-up, the last time being on January 30, 1984. The Claimant continued to complain of pain with muscle spasms during this time. Dr. Sprich therefore advised the Claimant, who was about to be released from the Department of Corrections, that the Claimant would need some additional rehabilitation and physical therapy. Dr. Sprich referred the Claimant to a physician in the Chicago area, where the Claimant returned to live after his release. The Claimant failed to contact this physician for any additional care, but he did seek one therapy treatment from a chiropractor. Dr. Sprich testified that the Claimant will have some future problems caused by the nature of the injury, the formation of scar tissue and the permanent placement of the surgical wires. These problems would probably

consist of degenerative changes in the neck, neck spasms and stiffness of the neck. The Claimant may also need additional surgery in the future to alleviate such symptoms.

The Claimant was released from incarceration on February 3, 1984. He has worked intermittently about 30 days since that time through September 1986. He complains that his neck and upper back are in constant pain, which at times is more severe and spreads into his shoulders. He has lost part of the full turning motion of his neck, so that he must turn his whole body in order to turn his head from side to side. He does not take any prescription medications for the pain.

The total amount of expenses for the Claimant's medical care outside the Vandalia facility was paid by the State. The amount of the expenses was not offered into evidence. In addition, the Claimant has received $491.03 in Illinois Public Aid medical benefits since his release from incarceration for treatment for a fractured nose in March 1986.

This Court has held repeatedly that the State of Illinois owes a duty to inmates of penal institutions to provide reasonably safe conditions. *Reddock v. State* (1978), 32 Ill. Ct. Cl. 611.

Surfaces such as terrazzo in shower rooms, dormitories, public buildings, *etc.*, are necessary so that the premises can be cleaned and made sanitary. The smooth finish of such surfaces allows for cleaning, but also makes the materials slippery at times. Persons controlling and using such surfaces know the nature of them and must conduct themselves accordingly. Therefore, falls on such surfaces are often not compensable, absent aggravating circumstances.

In the case before us, testimony establishes that complaints were raised by inmates and guards indicating anxiety over conditions in the area of the steps and in front of the low wall. The Claimant testified that he had slipped and fallen a number of times and had observed others slipping and falling. The prison authorities, to their credit, responded. Non-skid pads were placed on the steps and in front of them, but in a small area, not covering the entire wet area.

This Court finds that the site of the accident differs from a normal terrazzo floor on which a slip and fall has occurred. There was an accumulation of water, no hand holds, a history of slips and falls, concern expressed by the inmates to the guards and by the guards to the prison authorities, and action taken by the prison authorities. The action of the prison authorities in placing the non-skid pads was excellent as far as it went, but it did leave some of the wet area unaddressed. Because of the history of the site and because all that could have been done easily, or without burden, was not done, this Court finds the State breached its duty to maintain reasonably safe conditions.

However, users are to conduct themselves with awareness of conditions where terrazzo or other smooth surfaced floors are encountered. The Claimant testified that he was aware of the slippery conditions and yet stepped off the protected area. The Court finds that the Claimant is chargeable with contributory negligence to 50% of the total fault.

The evidence supports a finding that the Claimant suffered a permanent injury to his neck, which is wired in place. The Claimant suffers limitation in the movement of his neck, and suffers from some dull aches and pains in the neck. The Claimant has not sought a

great deal of medical attention, which fact is consistent with a finding that the Claimant's discomfort is presently at a relatively low level. However, natural changes may occur as a result of the injury and implantation of a foreign object into the body. The Claimant may experience greater discomfort and may need an additional operation in future years. His life expectancy is 35 years.

Additionally, this Court finds that the Claimant has a permanent scar, but it is not disfiguring.

The effect of the Claimant's injury on his earning capacity is difficult to measure, as his work history as a roofer has been intermittent, and no evidence was presented as to what the Claimant could earn as a roofer if employed.

Therefore, this Court finds that the Claimant is entitled to an award of $40,000, which should be reduced by $2,190.00 for what the State has already paid the Claimant for Dr. Sprich, leaving $37,810.00. Since the Claimant is responsible for 50% of the total negligence, his award should be $18,905.00. Out of this award, the amount of $491.03 paid by the Department of Public Aid for treatment of a subsequent injury should be reimbursed to the Department pursuant to section 11—22 of the Public Aid Code (Ill. Rev. Stat. 1985, ch. 23, par. 11—22).

Therefore, the sum of $18,413.97 should be paid to the Claimant and his attorney, and the sum of $491.03 should be paid to the Department of Public Aid.