94

(No. 86-CC-0286— 

ALLIED VAN LINES and RAY HOULETTE, Claimants, *v.*
THE STATE OF ILLINOIS, Respondent.

*Opinion filed July 23, 1992.*

BRESNAHAN, GARVEY, O'HALLORAN & COLEMAN, for Claimants.

ROLAND W. BURRIS, Attorney General (JOHN R. BUCKLEY, Assistant Attorney General, of counsel), for Respondent.

OPINION

FREDERICK, J.

Claimants, Allied Van Lines and Ray Houlette, filed their first amended complaint sounding in tort pursuant to section 8(d) of the Court of Claims Act (Ill. Rev. Stat., ch. 37, par. 439.8(d)), on June 4, 1987. The complaint as

to Allied Van Lines alleges the State negligently damaged the 1984 Kenworth tractor owned by Claimant, Houlette, when a snowplow of Respondent collided with the aforesaid tractor as the tractor was stopped, jackknifed, on Interstate 74. The claim of Ray Houlette was for lost profits due to the inability to use the 1984 Kenworth tractor while it was disabled and being repaired. The cause was tried by the commissioner assigned to the case.

The Claimants have filed their brief. The State failed to file its brief. The Claimants filed a motion for judgment on the evidence based on Respondent's failure to file a brief. That motion is denied. While it would have been helpful for the State to have filed a brief, such failure to file a brief in and of itself is not grounds for a judgment against Respondent on the merits. (*Spencer v. State* (1983), 36 Ill. Ct. Cl. 216.) Because the case has been tried, the Claimants have filed their brief, and the commissioner has rendered his report, the Court will rule on the merits without waiting for and having the benefit of Respondent's position. We feel that this approach is fair to the Claimants and not unduly harsh on the taxpayers of the State of Illinois. The People of the State of Illinois should not have to suffer because of the failure of Respondent's attorney to file a brief even after that attorney sought an extension of time to file a brief.

### The Facts

Allied Van Lines, Inc., leased a 1984 Kenworth tractor. This tractor was leased to Allied Van Lines by Claimant and driver, Ray Houlette. The tractor had been purchased six months prior to the date in question by Claimant, Houlette, for approximately $75,000. Houlette then drove the tractor for Allied.

On February 12, 1985, Mr. Houlette was traveling east on Interstate 74. Due to poor weather conditions, he

lost control of the truck and the truck jackknifed, ending up on the side of the road near milepost 34. Claimant Houlette exited the tractor and entered a State Trooper's vehicle. Shortly thereafter a snowplow owned and operated by the State of Illinois, while plowing snow, struck the Claimant's tractor, backed up, went forward again and struck the tractor a second time. The second impact violently lifted the tractor's front wheels off the pavement. Prior to this collision, there had been no damage done to the tractor. When the truck jackknifed, the tractor sustained damage to the fuel tank. The damage caused by the snowplow was to the front and front right of the tractor.

The tractor was taken to Schmitt Truck Repair for the repairs. The tractor was unavailable for use for 48 days. Using the three months' income prior to the collision and the three months' income after the tractor was returned, Mr. Houlette figured his lost profits at $158 per day. Claimant provided his tax return for 1985 to substantiate his figures. Claimant Houlette also paid an insurance deductible of $250. Charles Hope, a damage evaluator and appraiser for heavy equipment, testified as to damages for Claimant. He was licensed in Michigan as an appraiser and adjuster. He also did such appraisals in Illinois. He had done over 2,000 appraisals of damaged tractors prior to 1985. He had worked 13 years for Property Damage Appraisers, an appraisal business. In August of 1985, he opened his own appraisal business. The Respondent had no objection to Mr. Hope testifying as an expert. In February of 1985, Mr. Hope evaluated the damages to Claimant's tractor. Mr. Hope found the damage caused by the snowplow to be $28,234, and the total damage, including the jackknife damage, to be $36,000. Claimant, Allied Van Lines, seeks remuneration only for those damages caused by the snowplow in this case. Mr. Hope testified

he used the industry standards when computing damages to the tractor for parts and labor. Mr. Hope was of the opinion that the cab had to be replaced. This opinion was based on his observations of the tractor after the collision and the fact that many rivets had stretched and the truck was out of square. The cost to bring the cab back to square would have exceeded the cost of a replacement cab so he wrote his evaluation for a replacement cab which would then also be warranted by the factory for a full five years. The tractor had a full five-year warranty when purchased six months earlier.

Mr. Hope believed the dealer would have voided the warranty on the cab if the repairs he felt were appropriate were not made. The warranty requires that every panel that is damaged, buckled or stretched be renewed with factory rivets and with factory components. For this particular cab one would have had to take everything apart but the left door. Every panel had a stretch mark on it. Seventeen of 21 panels were damaged. Mr. Hope's exhibits did not include $1,000 for salvage value on the old cab and therefore Claimant's claim should be reduced by at least $1,000. Mr. Hope was not very clear on the amount of salvage value in his testimony.

Mr. Hope was of the opinion that the jackknife damage could have been repaired in four or five days once the parts were in. It would probably take a week to get the frame rail and fuel tank in from the factory. He believed a maximum of 13 days could be allowed for repair of the jackknife damage.

Mr. Hope believed that replacement of the cab was the most economical way to proceed. To replace every damaged part of the tractor would have cost $18,000 or more and the replacement cab was $20,000. He believed

there may have been other hidden damages found and it could have easily taken 90 days to repair the tractor if the repair method had been used.

The repair method would have likely cost as much as the replacement method and with the replacement method, the owner received the warranty. Mr. Hope believed repairing the cab was necessary.

The exhibits indicate that Transport Indemnity Company paid $20,758 for collision repairs to Schmitt Truck Repair for the account of Allied Van Lines and Ray Houlette on February 28, 1985. An additional $15,392.53 was paid by Transport Indemnity Company to Ray Houlette and Schmitt Truck Repair on April 1, 1985, for collision loss and finally $120 was paid by Transport Indemnity Company on April 12, 1985, to Ziebart Auto-Truck Rust-proofing. All three payments related to the February 12, 1985, collision, including the jackknife damage.

Russell Strand of GAB Business Services Incorporated testified as an expert on damages for Respondent. He has been an appraiser and claims adjuster for trucks and other heavy equipment for 27 years. GAB is an independent adjusting service. On February 26, 1985, he appraised the damage to Claimant's tractor. The appraisal took place at Schmitt's Truck Repair. Mr. Schmitt, the owner of the repair company, was present as was Mr. Hope. Mr. Strand could not understand why Schmitt and Hope felt a new cab was necessary. Mr. Strand testified that,

"A lot of times when you get into something like this where there is severe damage and it's a relatively new model and if there isn't a great deal of difference between the cost of repairing the cab and replacing it, I will go along with replacing the cab, but that wasn't the case here."

He was of the opinion that the impact by the snowplow was nowhere near severe enough to warrant replacement of the cab.

Mr. Strand was testifying from a copy of his appraisal and his memory as his company had destroyed the office file earlier. He never anticipated litigation in this matter. If litigation had been indicated, the file would have been placed in their "do not destroy" archives.

Mr. Strand's investigation of the truck indicated the impact of the snowplow had been to the right front of the vehicle. There was some minor misalignment of the door opening. He felt the truck was not misaligned in any significant way. He saw no popped rivets or misalignment of the panels. This expert gave the opinion that repairing the cab was appropriate and would have returned the tractor to substantially the same condition as it was prior to the collision. He did not think that repairing the damage would void the warranty. Mr. Strand opined the damage from the snowplow impact was $2,400 and that repairing this damage would not distract from the value of the tractor as long as it was properly done. Mr. Strand was of the opinion that if the repairs he had advocated were properly done, there would have been no effect on the tractor warranty. Mr. Strand also believed the salvage value for the cab should have been $5,000. Mr. Strand believed the snowplow damage could have been repaired in four or five days. Mr. Strand was not aware that the snowplow had struck the tractor two times. The written appraisal prepared by Mr. Strand indicated that he received Mr. Hope's damage appraisal at the time he did his own appraisal. He was in "total disagreement" with the appraisal of Mr. Hope and proceeded to prepare his own damage appraisal after inspecting the vehicle. However, the report does indicate that as much as 30% of the jackknife damage could be attributed to the collision with the snowplow. The pictures provided by Mr. Strand do not show the areas of controversy, being the panels and rivets.

## *The Law*

It is important to reiterate that a brief by Respondent would have been helpful to the Court. This is an adversarial proceeding and it is important that the Court have the position on the issues from both Claimant and Respondent. The Respondent has failed to file its brief even after requesting an extension of time to do so. This is disappointing because there are significant issues in this case.

It appears that the State is not contesting liability as no evidence was presented to indicate that the State contests liability. With no evidence and no argument presented by the State as to liability, we find that the Respondent is liable for the damages to Claimants.

The burden of proof in a negligence case is on claimant to prove by a preponderance of the evidence that the State was negligent and that such negligence was the proximate cause of claimant's damages. (*Hoekstra v. State* (1984), 38 Ill. Ct. Cl. 156; *Johnson v. State* (1983), 36 Ill. Ct. Cl. 276; *Neubauer v. State* (1984), 36 Ill. Ct. Cl. 173.) Claimants have met their burden of proof as the snowplow driver negligently drove into the jackknifed tractor two times, with the second impact being the more violent impact.

Claimants have the burden of proving their damages. (*Harris v. State* (1989), 41 Ill. Ct. Cl. 184.) The evidence in this case on damages is very contradictory. The State's expert testified no cab replacement was required, the damages were $2,400, and the repairs could have been made in five days. He also testified the salvage value was $5,000. The Claimant's expert testified the cab had to be replaced, the damages were $28,234, the repairs took 48 days, and the salvage value was $1,000. While experts often disagree, the magnitude of difference in this case is substantial.

In this case the insurance company for Claimants paid for the new cab based on the appraisal of Mr. Hope. There was no evidence before the Court other than that he was a competent expert witness. The State did not object to his testimony or to his qualifications as an expert. The State's expert took the somewhat unusual step of reviewing Mr. Hope's appraisal before he did his own independent appraisal. He then looked for reasons to dispute the findings of Mr. Hope. However, there were no pictures or direct testimony as to the pictures which would have documented for the Court that the panel damage, rivet damage and misalignment problems found by Mr. Hope did not in fact exist. The Claimants are entitled to fair and reasonable compensation for the damages to the tractor caused by the State. (*Pugh v. State* (1973), 29 Ill. Ct. Cl. 124.) The Claimants have presented substantial evidence as to the damages to the tractor which has not adequately been disputed by Respondent. Claimant Houlette has proven his damages calculated on the basis of his income tax return which is a method that has been approved by this Court. *Guffey v. State* (1987), 40 Ill. Ct. Cl. 179.

Fair and reasonable compensation to the Claimants is as follows: Pursuant to Count I, for Claimant, Allied Van Lines, and Ray Houlette, with the monies made payable to Allied Van Lines, Ray Houlette and Transport Indemnity Company, the sum of $22,984. These damages are determined in the following manner:

| | |
|---|---|
| Damages to tractor related to snowplow impacts with replacement of cab | $28,234.00 |
| Less salvage value | -5,000.00 |
| Less deductible paid by Claimant Houlette | - 250.00 |
| | $22,984.00 |

Pursuant to Count II,
 Damages to Claimant, Ray Houlette:

| | |
|---|---:|
| Lost profits—35 days at $158/day | $ 5,530.00 |
| Plus deductible paid by Claimant | + 250.00 |
| | $ 5,780.00 |

It is therefore, ordered, adjudged and decreed that Claimants, Allied Van Lines, Ray Houlette and Transport Indemnity Company are awarded $22,984 in full and complete satisfaction of Count I of the first amended complaint and Claimant, Ray Houlette, is awarded $5,780 in full and complete satisfaction of Count II of the first amended complaint.