(Nos. 87-CC-0440, 87-CC-0551 cons.—

LUCILLE ALGER and JERRY RODGERS, and ROBERT GEIGER and WILLARD NELSON, Claimants, v.
THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 13, 1992.*

CHAMBERLAIN, NASH, NASH & BEAN, for Claimants.

ROLAND W. BURRIS, Attorney General (TERRENCE J. CORRIGAN, Assistant Attorney General, of counsel), for Respondent.

## OPINION

Sommer, J.

The claims before us are for damage to crops in Geneseo Township, Henry County, due to flooding allegedly caused by the negligence of the State.

Lucille Alger and Jerry Rodgers are claiming a loss of the entire soybean crop on 24 acres. Robert Geiger and Willard Nelson are claiming a loss of the entire hybrid seed corn crop on 20.53 acres.

All Claimants allege that the flooded areas were unable to drain because culvert No. 29 under the Hennepin Canal Parkway was blocked with debris. The general flow of water in the area was northerly into culvert No. 29 under the Hennepin Canal, then under a county road, and then into the Green River. On the south side of culvert No. 29 was a wire mesh grate. This grate had been installed to prevent beavers from entering the culvert and building dams therein. The Department of Conservation found such beaver dams caused flooding and

were difficult to remove once built. There had been beavers previously in culvert No. 29.

On July 7 and July 8, 1986, approximately five inches of rain fell, and approximately one inch of rain fell over July 10, 11 and 12. On July 15, Jerry Rodgers, the tenant farmer on one of the parcels, noticed water standing to a depth of three or four feet in the back of his field to the south of culvert No. 29. Mr. Rodgers called the Department of Conservation and the Department cleared the grate of accumulated debris. The area then drained in 72 hours.

The Department of Conservation had a duty to reasonably maintain culvert No. 29 to keep it flowing so as to avoid damage to those upstream. However, for liability to attach to the State, the Department of Conservation must have had knowledge of the condition which caused damage and such condition must have been the proximate cause of the damage. *Boyle v. State* (1989), 41 Ill. Ct. Cl. 64.

The Department had been called to clean the grate of debris on several occasions over the years. The Department always responded promptly. The Department records indicate that the general area of culvert No. 29 was patrolled between July 8 and July 15, and there was no indication of a problem. There is no evidence that any State employee observed the south end of culvert No. 29 where the grate was. Access to the south end of culvert No. 29 by vehicle would have been difficult in the wet conditions. Rather, patrolling was done along the county road on the north side of the canal. From the vantage point of the county road, the flooded portions of the fields were not visible.

When the flooding was discovered on July 15, the grate was found to be clogged and had to be pulled out

by a power winch by the Department. The water flow on the north side of the canal increased noticeably, and a downstream neighbor inquired as to the cause of the increased flow.

This is not the first claim in which the State was responsive and commendably worked to forestall damage but was, nonetheless, in breach of its duty. (*Conners v. State* (1988), 40 Ill. Ct. Cl. 112.) We find that the State breached its duty by maintaining a grate that it knew could clog and not discovering that the grate had clogged for a period of a week.

The State contends that the clogged grate was not the proximate cause of the flooding, or, in the alternative, that the flooding and damage would have occurred anyway. The State contends that the flap on the drain at the Green River may have closed, causing the ditches in the area not to flow. Stephen Moser, the site superintendent at the Hennepin Canal, testified that on July 13 he drove along the county road and noticed that water in the ditch on the north side of the road was not moving. He assumed that the flap on the Green River had closed. There was no flooding north of the canal. The State's expert and the Claimants' expert disagree as to whether there would have necessarily been flooding on the north side of the canal if the flap was closed.

The State contends that the volume of water was so great, because of the abnormal rainfall, that the whole drainage system could not accommodate it. It concludes that damage to the crop would have occurred necessarily, as it took 72 hours for the fields to drain when the grate was removed.

The Claimants' engineering expert, Ronald Wallace, testified that the fields should have drained in about 33

hours given the amount of rainfall. Jerry Rodgers, who has a Master's degree in agriculture from the University of Illinois, testified that his crop could be under water for two days, but then it would die. Edward Kiefer, Mr. Rodgers' farm manager, testified the same. The conclusion this Court draws is that, had the area drained normally, there would have been some damage but not total destruction. We find that the blocked grate was the proximate cause of the destruction of the crops.

The damage to Alger and Rodgers was calculated by the testimony of Jerry Rodgers and Edward Kiefer. They personally measured the portion of the field that totally lost soybean production in 1986 due to the flood. They further had the production records from the other portion of the field for 1986 to establish an average-per-acre soybean yield of 56.4 bushels per acre. This multiplied times 24 acres of production loss, times the Fall 1986 price of $4.50 per bushel, establishes their claimed damages at $6,091.20. However, Mr. Kiefer testified that the yield would be reduced about three bushels per acre in the flooded area, even if it had drained properly.

The Geiger and Nelson claimed loss was calculated by measurements by Wyffels Hybrids, the seed corn company that had contracted for seed corn to be raised on the Geiger and Nelson field. The seed corn acreage for Geiger and Nelson was reduced by Wyffels Hybrids by 20.53 acres subsequent to July 8, 1986. Mr. Geiger testified that he, over the previous five years from 1986, had realized $435.03 per acre from Wyffels Hybrids seed corn production, and that average multiplied by the lost acres of 20.53 resulted in a total damage of $8,949.64. However, when Mr. Geiger was asked about the price he received for the 1986 seed corn grown on the remaining 79.47 acres of the field, he did not respond with a figure.

Claimants' Exhibit No. 10 is a document entitled "Wyffel's Hybrids, Inc. Final Grower's Settlement 1986 Crop Year." Exhibit No. 10 indicates that Wyffels paid $306.53 per acre for the crop on the remaining 79.47 acres. At the price Wyffels paid, the loss would be $6,293.06. No evidence was entered concerning yield loss due to the wet conditions had the Geiger and Nelson field drained properly.

This Court finds that the State was liable for the destruction of the crops. There is insufficient evidence to show that the heavy rains of the preceding week would have remained on the fields long enough to cause total destruction of the crops if culvert No. 29 had not been obstructed.

The State has argued against the amount of damages by contending that there is a cost of harvesting and that the prices chosen were not proper. The fuel cost of harvesting was $2 to $3 per acre, as established in testimony, and there was no indication that custom harvesting was contemplated.

Why the October 1986 price was chosen for the Rodgers and Alger soybeans was never explained as the crop was sold in 1987. However, the 1987 price would include storage, so we find that the current delivery price in October 1986 would be reasonable to use.

We find that the proper measure of damages for the Geiger and Nelson loss would be the price received for that portion of the field undamaged by the July blockage at culvert No. 29. There is no good explanation in the record why the price received for the remainder of the field was not used in the Geiger and Nelson calculations. We will use such, as in the Alger and Rodgers claim, as the best measure of damages.

152

Machinery costs, though urged as a deduction by the State, are not relevant when attempting to establish the cash loss. We will, however, deduct $3 per acre fuel cost savings from the requested amounts, and three bushels per acre from the Alger and Rodgers claim due to reduced yields because of wet conditions as testified to by Edward Kiefer.

Therefore, we award $5,695.20 to Lucille Alger and Jerry Rodgers (87-CC-0440); and we award $6,231.47 to Robert Geiger and Willard Nelson (87-CC-0551).