(No. 90-CC-3191

ROBERT VASQUEZ, Claimant, *v.* THE STATE OF ILLINOIS,
Respondent.

*Opinion filed May 25, 1993.*

*Order filed September 21, 1993.*

JOHN A. NUDO, for Claimant.

ROLAND W. BURRIS, Attorney General (STEVEN
SCHMALL and ROBERT SKLAMBERG, Assistant Attorneys
General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

The Claimant, Robert Vasquez, filed his complaint
in the Court of Claims on May 25, 1990. The case was
tried before the Commissioner assigned to the case. The
evidence consists of the report of proceedings, the
exhibits (Claimant's 1-4 and Respondent's 1-11), and the
commissioner's report. The Claimant filed a brief. The
Respondent failed to file a brief.

This action was brought by the Claimant for personal injuries he sustained on July 6, 1989, while he was crossing the Cass Avenue Bridge over the Illinois waterway via the pedestrian walkway in Joliet, Will County, Illinois. At the time of the incident, Needham Price was employed by the Illinois Department of Transportation as the tender of the Cass Avenue Bridge and Mr. Price was in control of the operation of the bridge. The Claimant claims negligence on the part of the State of Illinois, by and through its employee, Needham Price, for his failure to exercise reasonable care and caution for the safety of the Claimant, Robert Vasquez, in the operation of the bridge. The Claimant claims the State was negligent in the following respects: for its failure to keep a proper lookout for pedestrian traffic on the pedestrian walkway of the bridge; for failure to allow sufficient time for Robert Vasquez to cross the bridge prior to raising it for river traffic; for failure to exercise reasonable care when lifting the Cass Avenue Bridge; and for failing to know that to raise the bridge while Claimant was crossing it would place the Claimant in a position of danger.

It has been stipulated by the parties that the Cass Avenue Bridge and its operator, at the time of this incident, were under the jurisdiction of the State of Illinois.

At the evidentiary hearing conducted before the Commissioner, the Claimant, Robert Vasquez, testified that on July 6, 1989, between 10:30 and 11:00 p.m., he was crossing the Cass Avenue Bridge over the Illinois waterway on his way to downtown Joliet. When he was halfway across the bridge, it began to shake and rise. The Claimant grabbed the pedestrian handrail and rode up with the bridge, hanging from it until the water traffic passed and the bridge began to lower. As the two sides of the bridge began to close, Vasquez testified that, fearing

that he would be trapped between the two sides, he pulled himself over onto the pedestrian walkway. He was unable to keep his balance and tumbled down the walkway, falling onto the concrete sidewalk below and suffering a number of injuries to various parts of his body.

Officer Thomas Stein of the City of Joliet police department testified that on July 6th he was given a call to proceed to the Cass Avenue Bridge where there was a report of a man down. When Officer Stein and his partner, Patrick Blatti, arrived at the bridge, they found the Claimant, Mr. Vasquez, lying head down with "obvious broken legs." Officer Stein testified that witnesses stated that the Claimant was near the top of the bridge and had tumbled down after the bridge was lifted. Officer Stein testified that he interviewed the bridge tender, Needham Price, who advised him that he had not seen anyone on the bridge at the time he opened it. Stein further testified that he had prepared a police report in collaboration with his partner who interviewed witnesses at the scene who stated that the victim was near the top of the bridge and rolled down when the bridge was lowered.

In addition to Officer Stein, the State's only other witness, Mr. Lee Muir, an engineering technician with the Department of Transportation, testified to the mechanical operation of the Cass Avenue Bridge. Mr. Muir testified that usually the tender receives a signal from a boat, being one long and one short blast of the boat's siren, which indicates to the bridge tender to start procedures to raise the bridge. He further testified that the standard procedure is to first lower the gates. The gates are equipped with signal lights and bells which are automatically activated to notify pedestrians and vehicles to clear the bridge. The bridge is raised only after the bridge tender checks to be sure the bridge is clear.

Mr. Vasquez was taken to the St. Joseph Hospital where he was diagnosed as suffering from a comminuted fracture of his left femur, fractures to his left tibial plateau, fibula and condyle, and fracture to lumbar vertebra L1, L2 and L3. Vasquez was placed in skeletal traction and then a body cast. He was later transferred from St. Joseph Hospital to the Congress Health Care Center in Chicago for several months of treatment. At the present time, Mr. Vasquez ambulates with crutches, resides with his brother in Joliet, and suffers from a 3½ inch shortening of his left leg as well as a flail left leg, atrophy of the left calf, a condition of equinus in left foot, and other injuries. He has not worked since the incident and receives Social Security Disability due to his injuries. Dr. William B. Fischer testified that the Claimant's injuries were permanent in nature and a life expectancy table introduced into evidence indicated Mr. Vasquez had a life expectancy of 43.8 years.

Mr. Vasquez's left leg is now flail, which means it has a false joint in mid-femur and incapable of weight bearing. The left leg itself is now some 3½ inches shorter than the right leg, his left knee is passively supple between extension and 90 degrees of flexion which renders it incapable of weight bearing, his left foot and ankle are in equinus with only a trace of motion, and there is a marked disuse atrophy of some 2 inches on the left calf which Dr. Fischer regards as a "shriveling." Mr. Vasquez is now possessed of a reversed lumbar lordosis with the presence of very prominent spinous process. His spine lists to the right when weight bearing and there is a prominent residual scar about the size of a quarter on Mr. Vasquez's right forehead. Each of these conditions is directly related to the incident in question and each is permanent in nature.

Mr. Vasquez cannot ambulate without the use of crutches and he clearly is incapable of engaging in the type of construction and roofing work in which he has been employed in the past. With his limited educational attainment of merely eighth grade, Mr. Vasquez has no other skills and has clearly lost a good portion of his earnings capacity.

There is no question that the fractures sustained by Mr. Vasquez to three lumbar vertebrae, the comminuted fracture to his left femur, the fractures to his left tibial plateau, fibula and condyle were and are painful conditions. Mr. Vasquez testified to presently being in constant pain and Dr. Fischer agreed that such pain would be consistent with the Claimant's current condition. Mr. Vasquez spent some time in skeletal traction at the St. Joseph Hospital after a pin was placed through his left knee.

The testimony further indicates that Claimant had consumed three quarts of beer prior to the incident and that he had another broken quart of beer on his person at the time he was found by the police. The departmental report includes medical reports that indicate Claimant either jumped or fell from the bridge and that the incident was a possible suicide attempt. The medical reports in the departmental report further indicate that Claimant was HIV positive and was on parole. The medical records also indicate Claimant refused to follow through with physical therapy on several occasions. The progress notes of October 6, 1989, at 6:00 p.m. indicate Claimant was verbally abusive to the hospital staff, he threatened to blow up the place, and stated, "I'm going to die anyway so what the heck."

The Respondent did not call Needham Price or present his evidence deposition. The Respondent did not present any medical testimony to explain the medical

reports. We note these matters because the Court has some considerable concerns in regard to Claimant's physical and mental condition on the bridge in light of the warning devices on the gates and the medical reports indicating a possible suicide attempt. These concerns, however, are not answered in the Respondent's case.

The Illinois Department of Public Aid is granted a lien upon any recovery made by a Public Aid recipient from injuries sustained by him. (305 ILCS 5/11—22.) The purpose of this lien is to reimburse the State for medical assistance provided the recipient as a result of the injury.

In September of 1991, the Claimant filed a petition with the Court pursuant to section 11—22 of the Public Aid Code (305 ILCS 5/11—22) requesting the Court conduct an evidentiary hearing for the purpose of reducing and apportioning the amount of the lien claimed by the Illinois Department of Public Aid. The Department of Public Aid contends payments in the amount of $69,931.87 were made to or on behalf of Robert Vasquez between July 6, 1989, and August 5, 1991. While Mr. Vasquez's testimony does not disagree that payments in that amount were made by Public Aid, he does dispute that all of these payments related to treatment rendered to him as a result of this incident.

The unrebutted testimony clearly indicates that the total payments made to or on behalf of Mr. Vasquez by Public Aid as a result of this incident total $46,360.43. The total of $69,931.87 was paid to Claimant for this and other matters. Claimant does not dispute he received the total amount from Public Aid.

The State can be negligent in its failure to properly operate a bridge under its control. (*Federal Barge Lines,*

*Inc. v. State* (1973), 29 Ill. Ct. Cl. 25.) The *Federal Barge Lines, supra,* court, citing *Tugboat Rental Co. v. State,* 21 Ill. Ct. Cl. 360, stated that:

"We are of the opinion that failing to raise the bridge when it had ample notice of the approach of the vessel, was a neglect of duty on the part of the Respondent. The State of Illinois, acting by and through its agent was guilty of negligence, which proximately caused the damages complained of by the Claimant."

While the facts of the *Federal Barge* case differ in that the claim was based on the failure to raise the bridge in Joliet for a boat to pass and the present case alleges the wrongful raising of the bridge which injured a pedestrian, there are some striking similarities. Both cases involve the same bridge and in both cases, the State failed to offer the bridge tender's testimony. The bridge tender's testimony and the medical personnel's testimony may well have proven a lack of causation or at a minimum additional comparative negligence. Unfortunately, this Court will never know since no such testimony was presented.

Claimant has the burden of proving by a preponderance of the evidence that the State of Illinois was negligent, that such negligence was the proximate cause of the injury, and that damages naturally flowed therefrom. (*Stanley v. State* (1986), 39 Ill. Ct. Cl. 107.) The Claimant also has the burden of proving his damages. *In re Application of Lopez* (1987), 39 Ill. Ct. Cl. 315.

It is the finding of this Court on the state of the record that the Claimant has met his burden of proof as to negligence and damages. While we have these aforementioned concerns as to causation, the Respondent failed to produce competent evidence to prove a lack of causation.

We do, however, find some competent evidence of comparative negligence. It is undisputed that Claimant

had three quarts of beer to drink and a fourth quart of beer in his possession on the bridge. There is also no evidence to indicate that the lights and bells were not working on the gates to give Claimant warning of the approaching boat and raising of the bridge. The award in this case will therefore be reduced 7.5% for comparative negligence. The Claimant had a duty to use care and caution while crossing a draw bridge when the lights and bells sounded to get off the bridge. *Guffy v. State* (1987), 40 Ill. Ct. Cl. 179.

We find Claimant's total damages to be in the amount of one hundred thousand dollars ($100,000). That sum is reduced by seven thousand five hundred dollars ($7,500) for comparative negligence. The award is further reduced by the sum of $46,360.43 pursuant to the lien of the Department of Public Aid. *Connors v. State* (1988), 40 Ill. Ct. Cl. 112.

Based on the foregoing, Claimant is awarded the sum of $46,139.57. The sum of $46,360.43 should be paid to the Department of Public Aid.

## ORDER

FREDERICK, J.

This comes before the Court on the motion of Ramon Vasquez to be substituted as Claimant in this cause in his role as Independent Executor of the Estate of Robert Vasquez. The Court being fully advised in the premises it is hereby ordered that Ramon Vasquez as Independent Executor of the Estate of Robert Vasquez shall be substituted as Claimant in this cause.